USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: 68
DATE FILED: 11/29/10

1UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GLORIA SHEPHERD,

                    Plaintiff,

    - against -

LAW OFFICES OF COHEN & SLAMOWITZ, LLP,

                    Defendant.

08 CV 6199 (CM)(LMS)

REPORT AND
RECOMMENDATION

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/21/10

**TO: THE HONORABLE COLLEEN MCMAHON, U.S.D.J.**

Presently before this Court is Plaintiff's Petition for Attorney's Fees and Costs in accordance with Plaintiff's acceptance of Defendant's Rule 68 Offer of Judgment of December 1, 2009. See Docket #50, Motion for Attorney's Fees and Costs (hereinafter, "Pl's Mot.") and Docket #47, Notice of Acceptance with Offer of Judgment.[1] After acceptance of the Rule 68 Offer of Judgment, Plaintiff made a Motion for Attorney's Fees and Costs on December 16, 2009 and Defendant opposed the motion on December 30, 2009. See Docket #59, Affirmation in Opposition to Motion (hereinafter, "Def's Opp."). Plaintiff sent a Reply Affirmation and Memorandum of Law on January 7, 2010. See Docket #63 and 64, Reply Affirmation and Reply Memorandum of Law (hereinafter, "Reply"). This matter was referred to me by Your Honor on January 5, 2010, for a Report and Recommendation on this specific, non-dispositive motion. See Docket # 60, Order of Reference. After reviewing the file and considering the arguments of

---

[1] Your Honor, in the Decision and Order Denying Motion for Summary Judgment, stated that the "court will award attorney's fees *to plaintiff* on this motion, as a sanction for [the motion's] utter frivolousness." Docket #39, Decision and Order, at 6 (hereinafter, "Order")(emphasis in original). The attorney's fees for that particular motion that Defendant was ordered by the court to pay are subsumed within this final motion for attorney's fees.

12/21/2010 The Report is adopted as the Court's Report with the consent of both parties. The Clerk is directed to enter judgment and close the case. Colleen McMahon

MEMO ENDORSED

counsel on both sides, I conclude, and respectfully recommend that Your Honor should conclude, that Plaintiff's Motion for Attorney's Fees and Costs should be granted in its entirety, and that Plaintiff should be awarded $62,322 in fees and $5,940.66 in costs for a total award of $68,262.66.

## I.    BACKGROUND

Plaintiff Gloria Shepherd filed her Complaint against Defendant on July 8, 2008, alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. (hereinafter, "FDCPA") and the New York General Business Law § 349 (hereinafter, "NYGBL § 349") as well as a claim for defamation. See Docket #1, Complaint. Plaintiff was seeking both damages and declaratory relief due to allegedly "unfair, abusive and deceptive practices employed by Defendant in its attempt to collect an alleged debt from Plaintiff." Id. The Complaint asserts that at the time of Defendant's debt collection efforts, Plaintiff had already settled the debt. She subsequently decided to bring an action against Defendant for the pecuniary and non-pecuniary harm she suffered when Defendant improperly froze her bank account and allegedly published defamatory statements about Plaintiff to third party credit reporting companies. Id.

Defendant filed an Answer with a Counterclaim that required an Answer to Counterclaim by Plaintiff. See Docket #3 and 4. On May 21, 2009, after making a Rule 68 Offer of Judgment for $1000 to which Plaintiff did not respond, Defendant made a Motion to Dismiss. See Docket #7, Motion to Dismiss. Plaintiff opposed the Motion to Dismiss and Defendant submitted a Reply Memorandum. See Docket #9, 10. While the Motion to Dismiss was pending, Defendant made a Motion for a Protective Order, which Plaintiff opposed. See Docket #17, 23. Defendant filed a Reply on October 8, 2009 (Docket #25), and Your Honor denied Defendant's request for a protective order, which would have prevented the deposition of David Cohen. See Docket #38.

Plaintiff filed a Motion to Amend the Complaint on October 19, 2009, but withdrew the motion with permission to refile, with Your Honor's approval, due to new evidence that had come to the attention of Plaintiff. See Docket #29, 42. On October 29, 2009, Your Honor denied Defendant's Motion for Summary Judgment[2] and sanctioned Defendant for the "utter frivolousness" of the motion by awarding attorney's fees and costs to Plaintiff. Order at 6; see footnote 1, supra.

Plaintiff made several attempts to settle this case, both before and after filing her Complaint. Prior to filing, Plaintiff sent a letter, dated January 21, 2007, which included an offer to settle the matter for $2750. Ex. 6, Pl's Reply Mem. According to Plaintiff, Defendant then allegedly attempted to contact Plaintiff (the client) directly, knowing that she was represented by counsel, and sending her a "Consent to Vacate Judgment." Ex. 7, Pl's Reply Mem.; see also Order at 2. Plaintiff again offered to settle the matter, this time for $3250. Id. Defendant made no counter offer. According to Plaintiff, Plaintiff made several other offers to settle over the course of the litigation, without success. Reply Mem. at 3. Defendant eventually offered to settle the matter for $14,000, after learning that Plaintiff had an affidavit from Defendant's process server wherein the process server confessed to making false statements in affidavits of service filed on behalf of Defendant. Ex. 8, Pl's Reply Mem; see also Docket #42. Plaintiff countered this offer with a demand of $170,000. Reply Mem. at 3. Defendant ultimately made its second Offer of Judgment for $10,000, plus fees and reasonable attorney's fees, which Plaintiff accepted. See Docket #47, Notice of Acceptance with Offer of Judgment.

---

[2]Although labeled as a Motion to Dismiss on the Docket Sheet, Defendant's motion was brought as a Motion for Summary Judgment and Your Honor addressed it as such.

## II. STANDARD OF REVIEW

The Court has wide discretion in determining whether to award attorneys' fees and in determining the reasonableness of any such award. Arbor Hill Concerned Citizens Neighborhood Assoc. v. County of Albany, 522 F.3d 182, 190 (2d Cir.2008). A reasonable fee is calculated by taking "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart et al., 461 U.S. 424, 433 (1983). This is often referred to as the "lodestar method" and is the method that has "achieved dominance in the federal courts." Gisbrecht v. Barnhart, 535 U.S. 789, 801 (2002). "The reasonable hourly rate is the rate a paying client would be willing to pay." Arbor Hill, 522 F.3d at 190. Courts are also to consider that a reasonable client wishes to "spend the minimum necessary to litigate the case effectively." Id.

The Second Circuit has held that "[i]n determining what rate a paying client would be willing to pay, the district court should consider, among others, the Johnson factors." Id. (citing Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir.1974), abrogated on other grounds by Blanchard v. Bergeron, 489 U.S. 87, 92-93, 96 (1989)).[3] Thus, the Second Circuit's approach is an amalgam of the lodestar method and the Johnson factors. While Defendant argues that the Second Circuit has "abandond[ed] the lodestar approach to fee awards," the Supreme Court seems to disagree. Def's Opp. at 2. In a recent decision, Perdue v. Kenny A., the Supreme

---

[3]The 12 factors enumerated in Johnson are "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." Johnson, 488 F.2d at 717-719.

4

Court reiterated that the lodestar method is "the guiding light of our fee-shifting jurisprudence," noting that it was "readily administrable" and "objective." Perdue v. Kenny A., 130 S. Ct. 1662, 1672 (2010)(internal quotes and citations omitted). In Perdue, the Supreme Court stated that "there is a 'strong presumption' that the lodestar figure is reasonable" and valued the fact that, unlike the Johnson factors, the lodestar method "cabins the discretion of trial judges." Id. at 1672-3. Furthermore, in Perdue, the Supreme Court noted that the presumption that the lodestar figure was a reasonable one "may be overcome in those *rare circumstances* in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." Id. at 1673 (emphasis added).[4] However, it is understood that the lodestar figure "includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee." Id. at 1673. While the Supreme Court, in Perdue, did not expressly overrule the Second Circuit method of incorporating both the lodestar figure and the Johnson factors in determining attorney's fees, it appears that the Court prefers district courts to use the more objective lodestar approach and only to consider the Johnson factors if such a "rare circumstance" requires it.[5]

### III. DISCUSSION

In this case, Plaintiff seeks fees in the following amounts: Daniel Schlanger, $250 an

---

[4] Perdue involved a situation where a party was seeking an upward enhancement of attorney's fees based on outside considerations, rather than a downward reduction of fees such as that sought by Defendant in this case. Still, the Supreme Court's endorsement of the lodestar approach as the primary method for determining attorney's fees applies.

[5] Plaintiff sent a letter to the Court detailing a case from the Eastern District, Jin v. Pacific Buffet House, Inc., No. 06 Civ 579 (VVP), 2010 WL 2653334 (E.D.N.Y. June 25, 2010), that stated that the ruling in Perdue "cautions against using a strict Johnson approach as the primary basis for determining reasonable attorney's fees, but nowhere calls into question the idea of using relevant Johnson factors in helping to come to a reasonable fee." As this case is not from within the Southern District, it is not controlling on this Court.

5

hour; Joseph Mauro, $300 an hour; Jeanne M. Christensen, $210 an hour; and David J. Fryman, $160 an hour. The total amount sought in fees is $62,322, based on multiplying these hourly rates by the time expended.[6] Defendant does not object to Plaintiff's proposed rates *per se*; rather it contends that the rates should be reduced after consideration of several of the Johnson factors. Moreover, Defendant argues that the fee award should exclude what it claims are excessive, redundant, and unnecessary hours spent by Plaintiff's counsel in the course of litigating this case.

A.      **Counsels' Qualifications and Experience**

Daniel A. Schlanger is a 2004 graduate of Harvard Law School. Pl's Mot. Ex. A at ¶7. He is admitted to practice in New York, Ohio, and the Southern and Eastern Districts of New York. Id. at ¶9-11. Before joining the law firm of Schlanger & Schlanger in 2007, Mr. Schlanger worked as a staff attorney for the Legal Aid Society of Cleveland where he focused exclusively on consumer protection and wage and hour law. Id. at ¶12-13. He has been involved in numerous cases involving these issues in both state and federal court. Id. at ¶13-15. He has published articles on these issues and sits on the New York City Bar Association Professional Responsibility Committee. Id. at ¶17, 19.

Joseph Mauro has been practicing law for 13.5 years and focuses his practice on abusive and deceptive debt collection. Pl's Mot. Ex. G at 4. He is admitted to practice in New York, and the Eastern and Southern Districts of New York. Id. He has been recognized by the Suffolk County Pro Bono Foundation and has lectured in various locations on the Fair Debt Collections Practices Act. Id. Several years ago, he was awarded rates in the Eastern District ranging from

---

[6]Although Plaintiff's original motion requested $62,622 in combined fees, Mr. Schlanger submitted a supplemental declaration that showed he had improperly added in an extra $300.

$250 per hour to $275 per hour. Id. at 3.

Jeanne M. Christensen is a 1992 graduate of the University of Maryland Law School. Pl's Mot. Ex. B at ¶4. She is admitted to practice in Maryland, New York, and the Southern and Eastern Districts of New York. Id. at ¶5, 6. Immediately following graduation from law school, Ms. Christensen worked at a Baltimore, MD, firm that specialized in federal employment litigation. Id. at ¶7. From there, she spent two years at Stockfield & Fixler, a general litigation firm, and from 2000 to 2003, she performed part-time contractual work in the field of real estate. Id. at ¶7. She joined Schlanger & Schlanger in 2008. Id. at ¶7. She has previously been awarded her requested rate of $210 per hour in the Southern District of New York. Id. at ¶12.

David J. Fryman is a 2009 graduate of Fordham Law School. Pl's Mot. Ex. C at ¶5. While at law school, Mr. Fryman served as Associate editor of the Intellectual Property, Media, and Entertainment Law Journal and also worked as an intern for the Honorable Marcy L. Kahn in the New York Supreme Court. Id. at ¶5. He joined Schlanger & Schlanger in September of 2009. Id. at ¶3.

### B.    The Johnson Factors

Defendant argues that application of the Johnson factors militates in favor of "a substantial reduction" in the hourly rates sought by Plaintiff's counsel. Def's Opp. at 5. Defendant specifies six different Johnson factors that it believes supports a reduction in attorney's fees.

#### 1.    Time and Labor Required

Defendant focuses most of its attention on the factor of the time and labor required, claiming that Plaintiff's time entries are excessive and that "a substantial portion of the time and labor spent in this case was wholly and completely unnecessary." Id. at 7. Defendant reprises

this argument in its discussion of the determination of the number of hours reasonably expended. See id. at 11-14.

First, Defendant argues that the case required substantially fewer hours of labor than those that are claimed (266 hours) because there is no support in the record for Plaintiff's claim of anything more than insignificant actual damages. Def's Opp. at 5-6. Plaintiff counters that Defendant's argument concerning actual damages is an attempt to relitigate the merits of the case and, in any event, there is evidence of actual damages sustained. Reply at 5-6. As Plaintiff noted, Your Honor had determined, in deciding Defendant's motion for summary judgment, that the issue of damages would have to be decided at trial. Order at 5. The quantum of damages available has not been determined, and need not be determined in order to decide this motion. Time expended by counsel in discovery – which may or may not lead to proof of actual damages – is not inappropriate, so long as the expenditure of hours is not unreasonably excessive. There is no showing that the hours expended are unreasonably excessive.

Next, Defendant disputes time spent engaging in discovery concerning Defendant's net worth and other cases in which Defendant was a party, claiming that none of this information is relevant to the case at bar. Def's Opp. at 6-7. Plaintiff argues that the issue of net worth is an appropriate area for discovery because Plaintiff was seeking punitive damages, and this Court agrees. As for the matter of whether Defendant's misconduct in other cases is admissible in Plaintiff's case, a court outside this District has observed that "case law on this issue is sparse and divided." Dewey v. Associated Collectors, Inc., 927 F.Supp. 1172, 1175 (W.D.Wis.,1996). While Defendant has provided several recent cases where courts have only looked to the defendant's misconduct as to the plaintiff and not vis a vis other consumers, none of these cases addresses the issue of whether a defendant's misconduct in other cases was admissible;

8

presumably, the issue was not even raised by plaintiff's counsel. See Weiss v. Zwicker & Associates, P.C., 664 F.Supp.2d 214, 218 (E.D.N.Y. 2009); Nero v. Law Office of Sam Streeter, P.L.L.C., 655 F.Supp.2d 200, 210 (E.D.N.Y. 2009); Clark v. Brewer Michaels & Kane, LLC, 2009 U.S. Dist. LEXIS 95727 (W.D.N.Y. 2009). In any event, none of the cases offered by either Plaintiff or Defendant emanate from the Southern District of New York. Therefore, it appears that the issue is one that may well be ambiguous in the Southern District and would be ripe for argument. Thus, Plaintiff's time discovering potential evidence under this disputed issue was not unnecessary.

Finally, Defendant claims that Plaintiff's counsel spent an excessive amount of time[7] preparing an amended complaint and a motion for leave to file same, which was thereafter withdrawn. Def's Opp. at 7. Again, however, Defendant cites to a case outside of the Southern District to support its contention that 15 hours is an excessive amount of time for preparation of an amended complaint. See Savino v. Computer Credit, Inc., 71 F.Supp.2d 173, 176 (E.D.N.Y. 1999). As this Court is not aware of the factual issues involved in Plaintiff's aborted effort to amend the complaint, it is inconclusive whether or not 15 hours is excessive in that regard. Additionally, Defendant complains that this amended complaint was eventually withdrawn. Plaintiff withdrew the motion to amend the complaint because new evidence had surfaced regarding the unlawful activities of Defendant's process server, and such information would have been relevant in adding further causes of action to the complaint. See Ex. 8, Pl's Reply.

---

[7] Plaintiff's counsel asserts that the amount of time spent on amending the complaint was 5.3 hours for Mr. Schlanger and 5.1 hours for Ms. Christensen, for a total of 10.4 hours. Defendant claims that the amount of time so expended was 15 hours. This Court reviewed the time sheets that were submitted and determined that Mr. Schlanger spent 5.4 hours on the motion to amend and Ms. Christensen spent 6.2 hours, for a total of 11.6 hours.

9

Under all of the circumstances I conclude that Plaintiff's time spent in this regard was justified.

### 2.   Novelty and Difficulty of Questions

Defendant claims that, since the FDCPA is a "straight forward strict liability statute," Plaintiff did not need such a large amount of time to research the issues. Def's Opp. at 8. Plaintiff counters, convincingly, that there were other questions regarding tolling, Defendant's process server's possible illegal actions, Plaintiff's medical history, and Defendant's actions in similar cases, which required research and study beyond counsel's familiarity with the basic statute. Reply at 8. Even in a case involving a strict liability statute, there may be other factors that require research and investigation by counsel. Here, Plaintiff was seeking not just a statutory recovery but additional punitive damages that required further investigation by counsel. Therefore, I recommend that Defendant's request for a downward reduction of the fees based on this factor should be denied.

### 3.   Level of Skill Required to Perform the Legal Service Properly

Defendant argues, summarily, that Plaintiff "determined to 'run the meter' " in what Defendant termed "a simple, basic case." Def's Opp. at 8. In reviewing the docket sheet, as well as Your Honor's pointed Decision and Order (Docket #39), it appears to the undersigned that in most instances Plaintiff's litigation efforts were responses to Defendant's actions in litigating this case. See Pl's Mot., Ex. D, Billing Records (which detail time spent drafting letters regarding discovery disputes, responding to the motion for a protective order, responding to the motion to dismiss, drafting amended pleadings after new evidence surfaced, and continuous negotiations). The only assertion that Defendant makes is that Plaintiff served "voluminous, supplemental, overly broad discovery demands...in order to arbitrarily pick the pockets of the Defendant simply because [Plaintiff] perceive[d] them to be deep." Def's Opp. at

8. This is not supported by the billing documentation submitted by Plaintiff's. See Pl's Mot., Ex. D, Billing Records. Therefore, I recommend that Defendant's request for a downward reduction in fees based on this factor should be denied.

### 4. Preclusion of Employment by Attorney Due to Accepting Case

The fourth Johnson factor is whether counsel was precluded from other employment due to acceptance of this case. Defendant contends that the only client that Plaintiff lost by engaging in this litigation is the Defendant based, presumably, on a theory of conflict of interest. Def's Opp. at 8. Plaintiff argues that conflict of interest is not the only factor to be considered when analyzing lost clients but that " 'opportunity cost', i.e. the need to turn down other cases in order to have sufficient time to properly represent Plaintiff," should be considered. Reply at 9. While conflict of interest is one factor in determining preclusion of employment, opportunity cost is also a factor that affects the number of clients a firm can handle at any given time. Here, Plaintiff is represented by a small firm that can only handle a finite amount of work. Thus, when attorneys and staff are forced to expend time on one particular case, it affects the ability to take on other work. Defendant's request for a downward reduction in fees based on this factor should therefore be denied.

### 5. Amount Involved in the Case and Results Obtained

Defendant argues that although Plaintiff is the prevailing party in this litigation due to Plaintiff's acceptance of Defendant's Offer of Judgment, Plaintiff would not have been successful had the case gone to trial, due to evidence that came to light after the Offer of Judgment had been made. Def's Opp. at 9. This Court should not attempt to litigate this case after an Offer of Judgment has been accepted. "A request for attorney's fees should not result in a second major litigation." Hensley, 461 U.S. at 437. In determining attorney's fees, "the most

critical factor is the degree of success obtained." Hensley, 461 U.S. at 436. Plaintiff succeeded when the Offer of Judgment of $10,000 was accepted. Although courts may opt to withhold fee awards to a plaintiff who prevails in a § 1983 action but only receives nominal damages, such is not the case here. Farrar v. Hobby, 506 U.S. 103, 115 (1992)("In some circumstances, even a plaintiff who formally 'prevails' under § 1988 should receive no attorney's fees at all"). Plaintiff did not accept only a nominal award but obtained far in excess of the maximum statutory damages of $1000. 15 U.S.C. § 1692(k). Thus, I respectfully recommend that Defendant's request for a downward reduction in fees based on this factor should be denied.

### 6. Awards in Similar Cases

Defendant contends that Plaintiff did not receive a similar attorney's fee award in a recent case before the Honorable Stephen C. Robinson, wherein a default judgment was entered. See Mendoza v. G&M Foods, et. al., 08 CV 4498 (S.D.N.Y. 2008). In response, Plaintiff has submitted the motion for default judgment and request for attorney's fees in that case, which was not docketed, and in which Plaintiff requests the same fee of $250 per hour as in the instant case. Pl's Reply, Ex. 11. Plaintiff was granted partial default judgment in that case and attorney's fees were awarded in the amount of $16,530. See Docket #6 in that case, Partial Default Judgment. As this was the total amount requested in Plaintiff's motion for default judgment and attorney's fees, Judge Robinson must have accepted Plaintiff's request for $250 per hour as reasonable. Thus, Plaintiff has received a similar award in a recent case, and Defendant's request for a downward reduction based on this factor should be denied.

### 7. Other Johnson Factors

Defendant does not cite any of the other twelve Johnson factors in seeking a reduction in fees requested by Plaintiff. None of the Johnson factors cited had any bearing on the fee request

12

by Plaintiff. Additionally, the Court is aware of similar hourly fees charged by counsel in this District. Therefore, I conclude, and respectfully recommend that Your Honor should conclude, that $250 per hour for Daniel Schlanger, $300 per hour for Joseph Mauro, $210 per hour for Jeanne Christensen, and $160 per hour for David Fryman are reasonable fee amounts in the Southern of District of New York. See Port Authority Police Asian Jade Society of New York & New Jersey, Inc. v. Port Authority of New York and New Jersey, 706 F.Supp.2d 537, 541 (S.D.N.Y. 2010)(collecting cases that list the reasonable rate in the Southern District of New York as ranging anywhere between $185 to $600 per hour).

## C. Deductions of Time Entries That Are Excessive, Redundant, Not Related to Claims Upon Which Plaintiff Succeeds , or Otherwise Unnecessary

In the discussion of the number of hours reasonably expended, Defendant complains – in a general and conclusory manner – about time entries regarding communications between Plaintiff's co-counsel, preparation for the deposition of a defense witness, and the time expended by co-counsel, who was brought into the case approximately a month before it settled.

As noted by the Second Circuit, "In determining what fee is reasonable, the court takes account of claimed hours that it views as excessive, redundant, or otherwise unnecessary. In so doing, the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." Bliven v. Hunt, 579 F.3d 204, 213 (2d Cir. 2009) (internal quotation marks and citations omitted). In this case, in Your Honor's Decision and Order on Defendant's motion for summary judgment, you stated,

> Defendant's motion is so patently meritless that it should never have been made. It has wasted the court's time and wasted the time of counsel for Mrs. Shepherd. The court will award attorneys' fees *to plaintiff* on this

13

> motion, as a sanction for its utter frivolousness. We will settle all matters relating to attorneys' fees after the case has been tried, so plaintiff need not submit a fee affidavit relating only to this motion now.

Decision & Order at 6 (emphasis in original). This decision highlights the circumstances and general tenor of the litigation of this case, and supports the conclusion that any unreasonable expenditures of time were not caused by Plaintiff.

Defendant's first argument in favor of reducing the amount of time that Plaintiff requests is substantially the same argument that Defendant made in support of the first Johnson factor. See supra 6-7. As these arguments have already been addressed and rejected, this Court will not review them again.

Defendant further argues that Plaintiff's submission of time records detailing Daniel Schlanger's conferences with co-counsel Joseph Mauro, totaling 18.2 hours, is excessive. Def's Opp. at 15. Plaintiff contends that the billing records only show 11.4 hours that Mr. Schlanger and Mr. Mauro conferred regarding the case. After reviewing the submission of time records by Plaintiff, this Court finds that the amount of time Mr. Schlanger spent conferring with Mr. Mauro is 12.1 hours. Additionally, Defendant takes issue with Joseph Mauro's entry into the case less than one month before the case was settled. Id. at 17. Mr. Mauro had previously litigated cases involving the same Defendant and had conducted the deposition of Mr. John. In light of this work and experience, it is not excessive for Mr. Schlanger to have conferred with Mr. Mauro for 12.1 hours over the course of several weeks.

Defendant also complains of the amount of time (8.3 hours) that Mr. Schlanger spent preparing for the deposition of Mr. David Cohen. Def's Opp. at 16. As Mr. Cohen was a key witness and principal player in the case involving Mrs. Shepherd, and I therefore conclude that 8.3 hours of preparation time is not excessive.

14

## IV. CONCLUSION

For the aforementioned reasons, I conclude, and respectfully recommend that Your Honor should conclude, that Plaintiff's Motion for Attorney's Fees and Costs should be granted in its entirety, and that Plaintiff should be awarded $62,322 in fees and $5,940.66 in costs for a total award of $68,262.66.

## V. NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(d), or a total of seventeen (17) days, see Fed. R. Civ. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation. Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Colleen McMahon, at the United States District Court, Southern District of New York, United States Courthouse, 500 Pearl Street, New York, New York 10007, and to the chambers of the undersigned at the United States District Court, Southern District of New York, United States Courthouse, 300 Quarropas Street, White Plains, New York, 10601.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge McMahon.

Dated: November 24, 2010
White Plains, New York

Respectfully Submitted,

_____
Lisa Margaret Smith
United States Magistrate Judge
Southern District of New York

A copy of the foregoing Report and Recommendation has been sent to the following:

The Honorable Colleen McMahon, USDJ

Daniel Adam Schlanger
Schlanger & Schlanger, LLP
1025 Westchester Ave.
White Plains, NY 10604

Joseph Mario Mauro
Law Office of Jospeh Mauro, LLC
631 Montauk Highway
West Islip, NY 11795

Michael George Mc Auliffe
Law Offices of Michael G. Mc Auliffe, Esq
48 South Service Road, Suite 102
Melville, NY 11747